1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

CHRISTINA P.,                                         NO.  C18-5220-RAJ-JPD

9
                              Plaintiff,

10
        v.                                                  REPORT AND
                                                            RECOMMENDATION
11
COMMISSIONER OF SOCIAL
SECURITY,

12

13
                              Defendant.

14         Plaintiff appeals the final decision of the Commissioner of the Social Security

15   Administration ("Commissioner") which denied her application for Supplemental Security

16   Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a

17   hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court

18   recommends that the Commissioner's decision be REVERSED and REMANDED for further

19   administrative proceedings.

20                          I.        FACTS AND PROCEDURAL HISTORY

21         Plaintiff is a 48 year old woman with a tenth grade education and a GED.

22   Administrative Record ("AR") at 98.  Plaintiff has no past relevant work.  AR at 100-101, 77.

23         On February 20, 2015, Plaintiff filed a claim for SSI payments, alleging an onset date

24   of November 29, 2006.  AR at 231.  Plaintiff asserts that she is disabled due to depression,

REPORT AND RECOMMENDATION - 1

anxiety, panic attacks, degenerative disc disease, migraine headaches, carpal tunnel syndrome, tennis elbow in the right elbow, problems in the left elbow and protruding discs in the neck and back, and high blood pressure. AR at 247.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 162-65; 170-72. Plaintiff requested a hearing, which took place on December 14, 2016. AR at 90. On February 7, 2017, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 67-78. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 20, 2018, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national

economy.  42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. § 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. § 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. § 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

whether she can still perform that work. 20 C.F.R. § 416.920(f). If the claimant is able to

perform her past relevant work, she is not disabled; if the opposite is true, then the burden

shifts to the Commissioner at step five to show that the claimant can perform other work that

exists in significant numbers in the national economy, taking into consideration the claimant's

RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Tackett*, 180 F.3d at 1099,

1100. If the Commissioner finds the claimant is unable to perform other work, then the

claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On February 7, 2017, the ALJ issued a decision finding the following:

1.  The claimant has not engaged in substantial gainful activity since February 20, 2015, the application date.

2.  The claimant has the following severe impairments: degenerative disc disease of the cervical spine; headaches; right carpal tunnel syndrome; right lateral epicondylitis; depressive disorder; anxiety disorder; and somatic symptom disorder.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). In addition, the claimant could occasionally push/pull with the right upper extremity within the lifting restrictions. She can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with the bilateral upper extremities. Handling and fingering are limited to a frequent basis with the right upper extremity. She must also avoid concentrated exposure to extreme cold as well as hazards such as moving machinery and work at unprotected heights. The claimant can understand and remember simple job instructions and she can perform simple, repetitive, and routine tasks. She can have occasional, simple changes in the work setting. The claimant can maintain attention and concentration for two-hour intervals to complete such tasks without more than the normally expected brief interruptions or off task less than ten percent of the day. The claimant can have superficial interaction with the

public and co-workers.  She is able to accept instructions from supervisors.

5.    The claimant has no past relevant work.

6.    The claimant was born on XXXXX, 1971 and was 43 years old at the time of hearing, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7.    The claimant has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since February 20, 2015, the date the application was filed.

AR at 69-78.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Whether the ALJ erred at step two and in assessing Plaintiff's RFC by omitting the diagnosis of panic disorder with agoraphobia;

2.    Whether the ALJ erred in evaluating the medical opinions of Jean Adams, M.D., Tasmyn Bowes, Psy.D., Marsha Hedrick, Ph.D., Lisa Scheuffele, PT, and Julia Kelley, ARNP;

3.    Whether the ALJ erred in assessing Plaintiff's testimony regarding her symptoms and limitations;

4.    Whether the ALJ erred in his treatment of the lay evidence of Darren Lloyd;

5.    Whether the ALJ erred at step five by finding that Plaintiff could perform jobs that are not consistent with the RFC assessment.

Dkt. 13 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

VII.    DISCUSSION

A.    <u>The ALJ Erred in Failing to Account for Plaintiff's Panic Disorder with Agoraphobia</u>

1.    *Step Two*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of her physical or mental impairment.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment.  *See* 20 C.F.R. § 416.908.

The ALJ found that, in addition to her physical ailments, Plaintiff suffered the severe mental health impairments of depressive disorder, anxiety disorder and somatic symptom disorder.  AR at 69.  Plaintiff argues that the ALJ erred in failing to find Plaintiff's panic disorder with agoraphobia to be an additional severe impairment at step two, which resulted in a failure to account for the condition in the RFC.  Dkt. 13 at 2-3.

REPORT AND RECOMMENDATION - 7

1    The ALJ does not discuss panic disorder in his step two analysis, nor in his discussion of

2    Plaintiff's RFC.  The condition was diagnosed by examining psychologist Tasmyn Bowes,

3    Psy.D. after testing, and by Plaintiff's treating therapist at Cascade Mental Health Care during

4    Plaintiff's April, 2015 intake assessment and in a May, 2016 review.  Tr. 451, 482, 605.  Thus,

5    the condition is medically established and meets the "de minimis" threshold for a severe

6    impairment at step two.  *Ukolov*, 420 F.3d at 1005.

7    The ALJ's error is not harmful at step two, however, because the ALJ also found that

8    Plaintiff suffered from other severe impairments, thus finding in her favor at this step.  AR at 69.

9    The fact that an additional condition could also have been included does not establish a harmful

10    error at step two, because that step is not meant to identify the impairments that should be taken

11    into account when determining the RFC.  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49.  Instead,

12    the issue is whether the ALJ harmfully erred by failing to address the condition while assessing

13    Plaintiff's RFC.

14    2.    *RFC Assessment*

15    An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained

16    performance of the physical-mental requirements of jobs."  20 C.F.R. 404, Subpt. P, App. 2 §

17    200(c).  It is an administrative decision as to the most a plaintiff can do, despite her limitations.

18    SSR 96-8p.  The ALJ must assess all of the relevant evidence, including evidence regarding

19    symptoms that are not severe, to determine if the claimant retains the ability to work on a

20    "regular and continuing basis," e.g., eight hours a day, five days a week.  *Reddick v. Chater*, 157

21    F.3d 715, 724 (9th Cir. 1988); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

22    The ALJ did not discuss, or even mention, Plaintiff's panic disorder diagnosis or its

23    impacts in his RFC discussion.  The ALJ noted only that the RFC contains "cognitive, social and

24    adaptive limitations" (i.e. limitations to simple tasks, simple changes in the work setting, and

superficial interaction with the public and co-workers) in order to account for the Plaintiff's depression and anxiety.  AR at 73, 74.

The Commissioner argues that any error was harmless, because the ALJ cited to the page of Dr. Bowes' opinion that contains the panic disorder diagnosis when discussing Plaintiff's anxiety symptoms—apparently implying that the RFC must therefore have taken the condition into account.  Dkt. 14 at 3.  But the ALJ gave little weight to Dr. Bowes' opinion, and did not incorporate into the RFC the severe and marked restrictions Dr. Bowes found upon Plaintiff's ability to meet a schedule, and to complete a normal work day and week.  AR at 75, 452.[3]  As Plaintiff observes, the RFC's inclusion of cognitive and social limitations to address Plaintiff's anxiety and depression does nothing to address the potential scheduling or concentration impacts that could be caused by panic attacks or a fear of leaving home.  Dkt. 15 at 2.  Instead, the ALJ affirmatively found that Plaintiff could maintain attention and concentration and stay on task within normal limits.  AR at 72.

The mere fact that the ALJ identified and analyzed other severe mental impairments does not render harmless the omission of a separate severe mental impairment with its own set of impacts upon Plaintiff's ability to function. *See Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012).  In *Hill,* the ALJ found that the claimant had severe mental impairments that included bipolar disorder, mixed personality disorder, and anxiety disorder.  Ms. Hill, however, had also been diagnosed with panic disorder.  The Ninth Circuit held that "[b]ecause the ALJ excluded the panic disorder from Hill's list of impairments and instead characterized her diagnosis as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not

---

[3] The ALJ's treatment of Dr. Bowes' opinion is discussed in more detail in section (B)(3) below.

REPORT AND RECOMMENDATION - 9

1    supported by substantial evidence in the record." *Hill,* 698 F.3d at 1161. Here, as in *Hill*, the

2    ALJ's failure to address Plaintiff's panic disorder in assessing her RFC was not harmless.

3        In sum, the ALJ erred in his consideration of plaintiff's mental impairments, leading to

4    harmful error in assessing her RFC. Accordingly, this case should be remanded for further

5    consideration of Plaintiff's panic disorder with agoraphobia.

6        B.    The ALJ Erred in Evaluating the Medical Testimony

7        The ALJ rejected the opinions of each of Plaintiff's treating and examining doctors and

8    health providers, crediting only the opinions of the non-examining state agency physicians and

9    psychologists. As discussed below, the Court finds that the ALJ erred in his treatment of

10   doctors Adams and Bowes, and physical therapist Scheuffele.

11        *1.    Standards for Reviewing Medical Evidence*

12        As a matter of law, more weight is given to a treating physician's opinion than to that

13   of a non-treating physician because a treating physician "is employed to cure and has a greater

14   opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

15   *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion,

16   however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

17   disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881

18   F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

19   give clear and convincing reasons for doing so if the opinion is not contradicted by other

20   evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be

21   done by setting out a detailed and thorough summary of the facts and conflicting clinical

22   evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881

23   F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth

24   his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing

REPORT AND RECOMMENDATION - 10

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester*, 81 F.3d at 830.  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss,* 427 F.3d at 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas,* 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

Finally, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1527(f). [4]  Such testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-acceptable medical sources as nurses and medical assistants.  *See* SSR 06-03p (noting that because such persons "have

---

[4] This regulation applies only to claims, like this one, that were filed before March 27, 2017.

REPORT AND RECOMMENDATION - 11

1   increasingly assumed a greater percentage of the treatment and evaluation functions previously

2   handled primarily by physicians and psychologists," their opinions "should be evaluated on

3   key issues such as impairment severity and functional effects, along with the other relevant

4   evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must

5   provide "reasons that are germane to each witness," and may not simply categorically discredit

6   the testimony. *Dodrill,* 12 F.3d at 919.

7                    *2.      Jeanne Adams, M.D.*

8        Dr. Adams is Plaintiff's primary care physician. She treated Plaintiff throughout the

9   relevant time period, and also completed a physical functional evaluation for the Department of

10  Social and Health Services (DSHS) in April, 2015. AR at 498-500. Dr. Adams opined that,

11  from a physical standpoint, Plaintiff was capable of sedentary work. AR at 500. However, she

12  noted that "although [Plaintiff's] physical limitations might allow some kinds of work,

13  combined with her mental/emotional difficulties she is not able to be employable in a regular

14  predictable manner." *Id.*

15       The ALJ gave Dr. Adams' opinion little weight, because he found that the record after

16  the date of the DSHS evaluation shows "improvement with treatment." AR at 75. With

17  respect to Plaintiff's physical symptoms, the ALJ cited to two chart notes in April and May,

18  2015 that describe medication-related improvement of Plaintiff's frontal headaches (but not

19  those at the temples), and a June, 2015 chart note stating that "c-spine nontender" (but which

20  also notes "cont neck pain"). *Id.*, citing AR at 468, 470 and 467. With respect to

21  psychological issues, the ALJ stated that Plaintiff "reported improvement in her mental health

22  issues with treatment," citing to Plainitff's Cascade Mental Health therapy records between

23  August and October, 2016. AR at 75, citing AR 603-625.

24

REPORT AND RECOMMENDATION - 12

Plaintiff contends that the ALJ improperly "cherry-picked" the record for positive findings, and incompletely summarized those that he did selectively cite. Dkt. 13 at 5. As Plaintiff observes, the longitudinal treatment record, while showing some moderate (and sometimes temporary) improvements of some of Plaintiff's physical and mental issues, also demonstrates consistent chronic cervical pain and headaches, depression, anxiety and panic attacks, which continued after Dr. Adams' April, 2015 opinion. Dkt. 13 at 6-7.

With respect to Plaintiff's cervical spine condition, Plaintiff's physical therapy records from Providence Physical Therapy (where she received treatment from April, 2016 to March, 2017) show little, if any, lasting improvement. Plaintiff's initial visit showed a neck disability score of 78% in April, 2016, which temporarily improved to 64% in June, 2016, before reverting to 76% in October, 2016. AR at 642, 779, 840. A final physical therapy report in March, 2017 noted that Plaintiff's neck disability evaluation was the same as at the initial evaluation, observing that "[s]he does not seem to be making any permanent progress." AR at 29. Similarly, Dr. Adams noted cervical muscle spasm in October, 2016 and "End of PT 11/22: not improved" in November, 2016. AR at 630, 89. Dr. Adams' post-April, 2015 notes also continually note neck pain and headaches. AR at 628, 629, 630, 89. Physical Medicine specialist Kirk Danielson, M.D. noted in December, 2016 that physical therapy had provided only moderate gains but Plaintiff "still will get pain through the upper neck and headaches into the occipital region." AR at 884. Similarly, acupuncturist Kerry Dyer and naturopathic physician Preeta Kuhlman noted neck pain and severe headaches in 2016. Ar at 519-20, 524, 529.

The record similarly shows Plaintiff's mental health impairments continued after Dr. Adams' 2015 evaluation. While Plaintiff's therapy notes contain occasional reports of improvement (e.g. AR at 610 ("I do feel improvement")), they also reflect continuing struggles

with both depression and anxiety.  AR at 493 ("shopping anxiety"), 606 ("needs more therapy to help reduce depressive symptoms"), 615 ("still having a lot of anxiety"), 624 ("current anxieties . . . as a form of reality dreaming"), 87 ("mental health anxiety issues").  Other practitioners' records similarly reflect ongoing mental health problems, including panic attacks.  AR at 628 (2016 Dr. Adams note of "bouts of acute anxiety" and "panic attacks"), 519 (2016 acupuncture record noting "anxiousness with heart palpitation" and "difficult to leave home"), 884 (2016 Dr. Danielson note that "patient does express a decent amount of anxiety in her life which is potentially aggravating her [physical] symptoms").  Notably, a recent DSHS Psychological Evaluation by Terilee Wingate, Ph.D. on March 24, 2017 yielded results that were similar to those of Dr. Bowes' May, 2015 evaluation and noted that Plaintiff "has been on medications and in therapy without improvement."  AR at 17-21; AR at 449-54.

An ALJ may consider improvement with treatment in discounting a physician's opinion.  *Thomas*, 278 F.3d at 957.  However, the ALJ must consider the entire record and may not isolate favorable evidence to support his conclusions.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (ALJ did not provide "adequate evidentiary basis" for rejecting opinions of treating physician and providers merely "because the record revealed occasional indicia of improvement").  This is particularly true in the context of mental illness.  *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir.2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").  Indeed, it is to be expected that a claimant's mental health symptoms will wax and wane during treatment.  *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).  The ALJ improperly relied upon only isolated episodes of improvement and ignored the full context of the longitudinal record.  His

1    rejection of Dr. Adams' opinions is not supported by substantial evidence.  On remand, the

2    ALJ shall reassess Dr. Adams' opinions in the full context of the longitudinal record.

3                3.        Tasmyn Bowes, Psy.D.

4           Dr. Bowes performed a psychological evaluation of Plaintiff for DSHS in May, 2015.

5    AR at 449-54.  She diagnosed panic disorder with agoraphobia, major depressive disorder,

6    post-traumatic stress disorder (PTSD), and personality disorder.  AR at 451.  Dr. Bowes found,

7    among other things, that Plaintiff suffered severe anxiety and panic attacks, including recurrent

8    intrusive memories, nightmares, avoidant symptoms, hypervigilance, increased startle

9    response, irritability, emotional outbursts and sleep disturbance.  AR at 451.  She opined that

10   Plaintiff's ability to maintain a schedule, regular attendance and punctuality was severely

11   impaired, while Plaintiff's ability to follow detailed instructions, to communicate and perform

12   effectively in a work setting, to maintain appropriate behavior in a work setting, and to

13   complete a normal work day and week without interruptions were markedly impaired.  AR at

14   453.  Similarly to Dr. Adams, Dr. Bowes concluded that Plaintiff's "combination of physical

15   and M[ental] H[ealth] difficulties are likely to be disabling."  AR at 453.

16          The ALJ gave Dr. Bowes' evaluation little weight, finding that it "is not consistent with

17   the objective findings of her own examination of the claimant."  AR at 75.  The ALJ relied on

18   Dr. Bowes' findings that Plaintiff presented with good grooming and hygiene, had good eye

19   contact, normal speech, and scored 29 out of 30 on a cognitive test during her mental status

20   exam. *Id.*

21          Plaintiff contends that the ALJ inaccurately portrayed the results of Dr. Bowes'

22   findings. Dkt. 13 at 8-9.  As Plaintiff correctly notes, Dr. Bowes' mental status examination

23   resulted in numerous findings that were outside normal limits.  Dr. Bowes found Plaintiff's

24   speech to be of "odd tone and inflection," her presentation to be "odd," her mood to be

REPORT AND RECOMMENDATION - 15

1   "anxious," and her affect to be "flat/off." AR at 453. Dr. Bowes found that Plaintiff's thought

2   process, perception, fund of knowledge, and insight and judgment were not within normal

3   limits—finding "paranoia," an "odd way of seeing the world, magical thinking" and "limited

4   insight." AR at 454. Moreover, none of the positive findings cited by the ALJ undermines Dr.

5   Bowes' opinions; rather, they support her findings that Plaintiff has little to no difficulty with

6   short and simple instructions or performing routine tasks, and that Plaintiff's orientation,

7   memory and concentration were within normal limits. AR at 454-55. But Plaintiff's good

8   hygiene and cognitive abilities in no way contradict, or even bear upon, Dr. Bowes'

9   professional judgment that Plaintiff suffers impairments that severely or markedly impair her

10  ability to meet a schedule or to complete a normal work day or week without interruption from

11  her psychologically based symptoms.

12      The ALJ did not provide specific and legitimate reasons, based upon substantial

13  evidence, for rejecting Dr. Bowes' opinions. On remand, the ALJ shall reassess Dr. Bowes'

14  opinions.

15                      *4.      Marsha Hedrick, Ph.D.*

16      Dr. Hedrick conducted a mental examination of Plaintiff in June, 2015. AR at 461-465.

17  Dr. Hedrick diagnosed somatic symptom disorder and concluded that Plaintiff's adaptation was

18  poor, her social interaction was "very limited" and her ability to reason was "somewhat

19  impaired"; however, Dr. Hedrick found that Plaintiff's understanding and memory were

20  adequate and concentration and persistence were intact. AR at 465.

21      The ALJ gave Dr. Hedrick's evaluation little weight, because (1) the statement was

22  vague and did not provide specific functional limitations, and (2) Dr. Hedrick made positive

23  findings regarding Plaintiff's grooming, cooperation and performance on some (but not all)

24  cognitive testing. AR at 75. Plaintiff contends that if the opinion was vague, the ALJ was

REPORT AND RECOMMENDATION - 16

obligated to re-contact Dr. Hedricks, and argues that (as with Dr. Bowes) the ALJ relied upon positive examination findings while ignoring additional findings that support Dr. Hedrick's conclusions.  Dkt. 13 at 10.

The ALJ did not err in his assessment of Dr. Hedrick's evaluation.  Dr. Hedrick did not outline any functional limitations.  This is a specific and legitimate reason to disregard her opinion.  *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ may reject physician's statement when statement did not assess any limitations); *see also Meanel*, 172 F.3d at 1114.  Under such circumstances, there was no obligation to develop the record further; there was no ambiguity in the evidence, and other doctors, including Dr. Bowes and the conflicting opinions from the state agency doctors, provided clear functional limitations.  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  *Accord Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted source omitted).

The ALJ provided specific and legitimate reasons for disregarding Dr. Hedrick's opinion.[5]

### 5.    Lisa Scheuffele, PT

Ms. Scheuffele provided physical therapy to Plaintiff between November, 2014 and February, 2015.  Her treatment notes, while recording improvement in Plaintiff's wrist and

---

[5] Because the ALJ's first ground for rejecting Dr. Hedrick's opinion is valid, the Court need not reach Plaintiff's argument that the second ground was erroneous.  To the extent there was error, it was harmless.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

1    elbow pain, reflect little progress with respect to Plaintiff's neck pain and headaches.  AR at

2    378, 388, 411, 425.  At the close of her treatment, Ms. Scheufflele opined that although

3    Plaintiff had been "working hard" on her therapy program, "she is still limited functionally by

4    the headaches and cervical spine pain."  AR at 426.  Ms. Scheuffele concluded that "[d]ue to

5    the nature of the headaches and cervical spine pain limiting UE function, [Plaintiff] is not able

6    to work a full regular schedule."  *Id.*

7        The ALJ gave Ms. Scheuffele's opinion no weight.  AR at 75.  He explained his

8    treatment as follows:  "the examination findings from that time show decreased range of

9    motion in the cervical spine, tenderness to palpation, normal neurological findings, and only

10   mild loss of range of motion in the elbow, wrist, and fingers."  AR at 75.

11       As Plaintiff observes, the ALJ's rationale regarding Plaintiff's cervical issues is

12   nonsensical.  Dkt. 13 at 11.  Ms. Schuffele's findings of decreased cervical range of motion

13   and tenderness to palpation support, rather than conflict with, her opinion regarding Plaintiff's

14   cervical pain.  The ALJ has not articulated germane reasons for rejecting Ms. Scheuffele's

15   opinion.  On remand, the ALJ shall reassess Ms. Shueffele's opinion.

16                          *6.    Julia Kelley, ARNP*

17       Ms. Kelley completed a DSHS physical function evaluation just prior to the relevant

18   period, in December, 2014.  AR at 350-352.  Ms. Kelley diagnosed neck pain with

19   radiculopathy and lower back pain with radiculopathy, both markedly severe.  AR at 351.  She

20   opined that Plaintiff was severely limited, and unable to meet the demands of sedentary work.

21   AR at 352.

22       The ALJ gave Ms. Kelley's opinion little weight, because imaging from the time of the

23   evaluation showed no abnormalities of the lumbar spine, and only "minimal" degenerative disc

24   disease and a "tiny" osteophyte in the cervical spine.  AR at 76, citing AR at 357, 359-60.

REPORT AND RECOMMENDATION - 18

Furthermore, the ALJ took issue with Ms. Kelly's note of "numbness" with no additional elaboration or neurological finding. AR at 76. The ALJ concluded that the objective findings did not support the extreme limitations assessed by Ms. Kelly. *Id.* Plaintiff contends that the ALJ erred in relying on objective findings, when Ms. Kelley's opinion was based instead upon Plaintiff's pain. Dkt. 13 at 12.

As a non-acceptable medical source, the opinions of Ms. Kelley may be given less weight, and may be discounted for "germane" reasons. *Gomez v. Chater*, 74. F.3d 967, 970-71 (9th Cir. 1996); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ articulated germane reasons for rejecting Ms. Kelley's opinion. As the Commissioner notes, the record does not support a medically determinable impairment of the lumbar spine. Dkt. 14 at 14. The ALJ did not err in rejecting Ms. Kelley's opinion due to the normal lumbar X-ray, when the opinion was based at least in part on a low back impairment.

C.    The ALJ Erred in Assessing Plaintiff's Symptom Testimony.

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. § 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear

1    and convincing" reasons for rejecting the claimant's testimony.[6]  *Burrell v. Colvin*, 775 F.3d

2    1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112).  *See also Lingenfelter v.*

3    *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

4         When evaluating a claimant's subjective symptom testimony, the ALJ must specifically

5    identify what testimony is not credible and what evidence undermines the claimant's

6    complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at

7    722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a

8    claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and

9    conduct, daily activities, work record, and testimony from physicians and third parties

10   concerning the nature, severity, and effect of the alleged symptoms.  *Thomas*, 278 F.3d at 958-

11   59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

12        The ALJ found that Plaintiff's symptom testimony was not consistent with the medical

13   and other evidence and therefore discounted it, because:  (1) Plaintiff's symptoms were not

14   consistent with the objective evidence, and (2) Plaintiff's symptoms had improved with

15   treatment.  AR at 73-74.[7]  Plaintiff contends that it was error, after she had established

16   medically determinable impairments, to require that the severity of the pain she experiences

17   from those conditions be substantiated by objective evidence.  Plaintiff further contends that,

18   as with his analysis of Dr. Adams' evidence, the ALJ selectively identified instances of

---

20   [6] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded
     SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that
21   "subjective symptom evaluation is not an examination of an individual's character[,]" and
     indicated it would more "more closely follow [its] regulatory language regarding symptom
22   evaluation."  SSR 16-3p.  However, the Court continues to cite to relevant case law utilizing
     the term credibility.
23        [7] Plaintiff suggests that the ALJ might also have erroneously relied upon Plaintiff's
     activities of daily living as a third ground for rejecting her symptom testimony.  Dkt. 13 at 14-
24   15.  The Commissioner, however, concedes that this was not an additional ground for the
     ALJ's determination.  Dkt. 14 at 7.  The Court therefore need not address this argument.

REPORT AND RECOMMENDATION - 20

1    improvement, while the longitudinal record as a whole shows that improvement, if any, has

2    been insignificant.  Dkt. 13 at 13-14.

3         Plaintiff is correct.  First, the ALJ erred in discounting Plaintiff's testimony regarding

4    the extent of her neck and upper cervical pain based upon MRI findings of only "mild" and

5    "tiny" abnormalities.  Plaintiff is not required to provide objective medical evidence of the pain

6    itself, or of its severity; rather, she need only show that her condition could reasonably have

7    caused some degree of the symptom.  *Smolen*, 80 F.3d at 1282.  "The ALJ may not reject

8    subjective symptom testimony . . . simply because there is no showing that the impairment can

9    reasonably produce the *degree* of symptom alleged."  *Id.* (emphasis in original).  Second, as is

10   discussed in more detail in section (B)(2) above, the longitudinal record shows little, if any,

11   sustained improvement in Plaintiff's upper cervical and psychological conditions

12   notwithstanding the multiple treatment modalities (medication, physical therapy, acupuncture,

13   naturopathic medicine and psychotherapy) in which she has engaged.  The ALJ's rejection of

14   Plaintiff's testimony on this ground is therefore not supported by substantial evidence.

15        After reevaluating the medical evidence of record, the ALJ will be in a better position

16   to evaluate plaintiff's symptom testimony.  On remand, the ALJ should properly assess

17   Plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a

18   conclusion be warranted.

19        D.    The ALJ Erred in Rejecting the Lay Witness Statement of Darren Lloyd.

20        The ALJ must provide "germane" reasons for rejecting the testimony of a lay witness.

21   *Dodrill,* 12 F.3d at 919.

22        The ALJ gave little weight to the lay evidence submitted by Plaintiff's long-term friend

23   and roommate, Darren Lloyd, regarding Plaintiff's limitations.  The ALJ relied, in part, on a

24   finding of inconsistency with the medical record.  AR at 77.  Because the ALJ erred in his

REPORT AND RECOMMENDATION - 21

1    assessment of the medical evidence, he must also reconsider this ground for rejecting Mr.

2    Lloyd's statement.

3        The ALJ also rejected Mr. Lloyd's statement based upon "the reported activities of the

4    claimant, which suggested that she is able to function quite well."  AR at 77.  This is not a

5    germane reason for rejecting Mr. Lloyd's evidence.  The evidence regarding the activities cited

6    by the ALJ (driving, grocery shopping, doing household chores and preparing meals) shows

7    that the scope of these activities is limited.  Plaintiff's hearing testimony and function

8    statement establish that she drives only short distances (with Mr. Lloyd driving on any trips

9    over approximately 10 miles), and that she shops only two times per month, prepares only

10   simple meals, and does very few household chores, leaving most of them to Mr. Lloyd.  AR at

11   117-18, 277-78; *see also* AR at 18, 464.  Mr. Lloyd's statement is fully consistent with

12   Plaintiff's accounts of her own activities, AR at 69; those accounts therefore do not constitute a

13   germane reason for discounting Mr. Lloyd's evidence.

14       E.    On Remand, the ALJ Shall Reevaluate the Step Five Analysis.

15       Plaintiff contends that the ALJ erred at step five by relying upon jobs that were

16   inconsistent with Plaintiff's RFC and the Dictionary of Occupational Titles (DOT).  Dkt. 13 at

17   16-17.  The Court need not determine whether the ALJ erred at step five because remand is

18   required for errors earlier in the five step process, which may affect the scope of Plaintiff's

19   RFC.  If the ALJ considers evidence from a VE on remand, the ALJ shall make an appropriate

20   inquiry into the consistency of the testimony with Plaintiff's RFC and the DOT.

21       F.    Remand for Further Proceedings is Required.

22       Plaintiff seeks a remand for an award of benefits.  Dkt. 13 at 17-18.  However, a

23   remand for an immediate award of benefits is an "extreme remedy," appropriate "only in rare

24   circumstances."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal

quotations omitted).  First, Plaintiff must establish three required elements:  (1) the ALJ's failure to provide sufficient reasons for rejecting claimant's evidence; (2) a lack of outstanding issues to be resolved; and (3) a clear requirement that claimant be found disabled if the improperly rejected evidence were considered.  *McCartey*, 298 F.3d at 1076.  However, even then the Court retains flexibility to determine the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Brown-Hunter*, 806 F.3d at 495.

While Plaintiff has established errors in the ALJ's rejection of evidence, she has not established the remaining elements.  Outstanding issues remain to be resolved, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if he properly considered Plaintiff's evidence.  Therefore, the Court finds the proper remedy to be a remand for further proceedings.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than February 13, 2019.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on February 15, 2019.

REPORT AND RECOMMENDATION - 23

1    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3  assigned District Judge acts on this Report and Recommendation.

4    DATED this 30th day of January, 2019.

5

6

7  JAMES P. DONOHUE
   United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 24